IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| SAUNDRA CAUSEY, ) | Civil Action No. 3:05-2025-HMH-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

On April 18, 2002, Plaintiff applied for DIB. Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held October 5, 2004, at which Plaintiff appeared and testified, the ALJ issued a decision dated November 19, 2004, denying benefits and finding that Plaintiff was not disabled because she could perform her past relevant work as a dispatcher.

Plaintiff was forty-two years old at the time of the ALJ's decision. She has a high school education plus two years of college and past relevant work as a financial loan officer and office manager/dispatcher. Plaintiff alleges disability since July 9, 2001, due to chronic back and neck pain, fibromyalgia, post-traumatic stress disorder, degenerative disc disease, fatigue, and intermittent numbness and paralysis.

The ALJ found (Tr. 31-32):

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since July 9, 2001.

3. The claimant's impairments are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity for sedentary work as set out in the body of this decision.

7. The claimant's past relevant work as dispatcher did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 404.1565).

8. The claimant's medically determinable impairments do not prevent the claimant from performing her past relevant work.

9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 404.1520(f)).

On May 18, 2005, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on July 17, 2005.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42

U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...."  See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## **DISCUSSION**

Plaintiff alleges that: (1) the ALJ's decision is not supported by substantial evidence because he plucked out isolated instances of her activity and ignored the overall picture of her limitations; (2) the ALJ erred in evaluating her pain; (3) the ALJ erred in rejecting her treating physician's opinion; and (4) the ALJ erred in finding that Plaintiff could return to sedentary work as a dispatcher where there was no evidence she ever performed a sedentary dispatcher job.  The Commissioner contends that the ALJ's decision is supported by substantial evidence.[1]

Plaintiff served in the United States Air Force from 1981-1992 and the Army National Guard from 1995-1997.  She is a veteran of the Persian Gulf War.  See Tr. 131, 446, 457.  Plaintiff was injured in an automobile accident in 1994.  After the accident, Plaintiff complained of numbness

---

[1]Substantial evidence is:
>     evidence which a reasoning mind would accept as sufficient to support a
>     particular conclusion.  It consists of more than a mere scintilla of evidence
>     but may be somewhat less than a preponderance.  If there is evidence to
>     justify a refusal to direct a verdict were the case before a jury, then there is
>     "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966).  It must do more, however, than merely create a suspicion that the fact to be established exists.  Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

in her left arm and leg and chronic neck and back pain. Tr. 173, 180, 225, and 371. Cervical x-rays on October 30, 2001, revealed a reversed cervical curve consistent with muscle spasm, normal vertebrae and disc space, and normal neural foramina. Tr. 192. On November 15, 2001, Plaintiff was examined at the Asheville, North Carolina Veteran's Administration Medical Center ("VAMC") by Dr. Eva Morgenstern, a neurologist. Plaintiff reported that she had been laid off from her most recent job, was enrolled at Clemson University (commuting seventy miles a day from her home to classes), and had applied for Veteran's Administration ("VA") disability in the hope of pursuing vocational rehabilitation. Tr. 180. Dr. Morgenstern noted that Plaintiff had good range of motion of her neck, positive straight leg raises on the left, normal strength of the left upper and lower extremities, normal gait, and decreased sensation on her left side. Dr. Morgenstern diagnosed intermittent sensory disturbance, mechanical low back pain, and ruled out lumbar degenerative disc disease. Tr. 181.

Plaintiff was examined at the Columbia, South Carolina VAMC on November 28, 2001. She reported no history of syncope, paresthesia, weakness, tremors, arthritis, or joint swelling. Tr. 229. Examination revealed full range of motion of Plaintiff's back, a steady gait, symmetrical deep tendon reflexes, and no abnormal movements. Tr. 230. In December 2001, MRIs of Plaintiff's brain and lumbar spine were normal. Tr. 190-191, 194. Plaintiff complained of left-sided numbness and neck and back pain at the Columbia VAMC on February 27, 2002. Tr. 225. On March 28, 2002, Plaintiff was examined at the Asheville VAMC, at which time it was noted that she had a steady gait, normal deep tendon reflexes, left hand tremor with arm extension, and decreased sensation in her left upper and lower extremities. Plaintiff reported that she had missed large blocks of time from school and she was advised to medically withdraw from school until she was ready to

fully meet the expectations of her classwork. Tr. 176-177. In April 2002, Plaintiff was treated at the Columbia VAMC for complaints of lower back pain. Tr. 222. Plaintiff was evaluated at the Columbia VAMC physical therapy clinic for lower back pain on May 3, 2002. Her range of motion and strength were within normal limits and she was diagnosed with sacroiliac joint dysfunction. Tr. 215, 217.

Dr. Morgenstern referred Plaintiff to Dr. Jung Noh for nerve conduction and electromyography studies. In July 2002, Dr. Noh interpreted the findings of testing as suggestive of mild left C5-C6 cervical radiculopathy and L5-S1 lumbar radiculopathy. He opined that Plaintiff's symptoms were suggestive of fibromyalgia. Tr. 173-175. On July 8, 2002, a cervical MRI revealed normal vertebral alignment and minimal disc narrowing at C4-C5. Tr. 189. On August 22, 2002. Plaintiff told Dr. Morgenstern that she was considering returning to college at a site that was closer to her home. Examination revealed that Plaintiff had erect posture, an antalgic gait, and numerous tender points along her spine, shoulders, and neck. Dr. Morgenstern diagnosed Plaintiff with questionable recurrent kidney stones, back pain, chronic degenerative disc disease, and possible fibromyalgia. Tr. 172.

Plaintiff participated in a three-week chronic pain rehabilitation program at a VA center in Tampa, Florida from January 13 to 31, 2003. Tr. 253-391. Lumbar x-rays on January 21, 2003, demonstrated no fractures or subluxation of her lumbar vertebral bodies and well preserved space and height. Tr. 388-389. Plaintiff reported that her level of pain in her lower extremities decreased from eight or nine out of ten to seven out of ten at discharge. Tr. 261, 266, and 342. Plaintiff was diagnosed with chronic low back/neck pain with some radicular components. Tr. 378, 390. At

discharge, Plaintiff was noted to have met her goals regarding increased activity level and improved sleep. Tr. 254.

On January 6, 2004, the VA determined that Plaintiff had an overall disability rating of one hundred percent for service connected post-traumatic stress disorder ("PTSD"), degenerative disc disease with mild diffuse cervical spondylosis (C4-C5), and levoscoliosis of the lumbar spine with degenerative changes (L5-S1). She was found to have been seventy percent disabled beginning November 1, 2001, and one hundred percent disabled beginning March 14, 2003. Her arthralgias, fibromyalgia, chronic fatigue syndrome, exercise induced asthma, and other complaints were found to be not service-connected. Tr. 446-452.

Plaintiff was examined by Dr. Robert Kincheloe, an orthopedic surgeon, on April 6, 2004. Dr. Kincheloe noted that Plaintiff had no spasm in her tapezius muscles, no scoliosis, and no sciatic notch tenderness. Muscle testing of her upper extremities, including grip strength, was normal, and her gait was normal. X-rays of Plaintiff's cervical and lumbar spine were within normal limits for an individual of Plaintiff's age. Dr. Kincheloe diagnosed Plaintiff with chronic pain syndrome and fibromyalgia and opined that from an orthopedic standpoint he did not find any significant abnormalities and did not see any reason why Plaintiff could not work. Tr. 407-409. Dr. Kincheloe completed a "Medical Source Statement of Ability to Do Work-Related Activities" in which he opined that Plaintiff could occasionally lift twenty-five pounds, frequently lift ten pounds, could stand and/or walk for less than two hours in an eight-hour workday, and had no limitations on her ability to sit. Tr. 411-414.

On June 23, 2004, Plaintiff underwent a consultative psychological evaluation by Dr. James Ruffing, a psychologist. Testing revealed that Plaintiff's intellectual functioning was in the average range. Dr. Ruffing noted that he could find no evidence of memory dysfunction, and indicated that Plaintiff maintained the ability to understand and respond to the spoken word, was able to attend and focus fairly well, seemed able to perform repetitive tasks and could likely understand, remember, and carry out instructions. He also indicated that Plaintiff had possible indicators of histrionic personality features. Tr. 440-443. Dr. Ruffing completed a "Mental Medical Source Statement of Ability to Do Work" in which he opined that Plaintiff's mental impairments caused only slight work-related limitations. Tr. 444-445.

On August 13, 2004, Dr. Morgenstern wrote that Plaintiff had fibromyalgia and left-sided paresthesia, but evaluation had not revealed any mechanical cause in spinal or MRI imaging nor pathology in Plaintiff's central nervous system. Plaintiff was noted to have posture, gait, and tandem walking which were within normal limits; she had tender points along her clavicles, knees, and elbows; she had no joint swelling or erythema; and her sensation and temperature was decreased on the left versus the right side of her body. Tr. 52.

Plaintiff testified at the hearing that she suffers from arthritis in her hands, feet, knees, hips, back, and neck and is constantly in pain which is concentrated in her lower back and neck. She stated her knees swell and she experiences numbness on the left side of her body which severely impacts her functioning as she is left-handed. Plaintiff stated that at least once a week she becomes dizzy for at least twenty minutes and has blurred vision. Approximately five out of seven days a week she claims she endures headaches. Plaintiff stated that she could only stand, sit, or walk for twenty to thirty minutes at a time without experiencing pain and having to change positions and she

7

never lifts anything heavier than five pounds. She stated that she had PTSD from an incident that occurred while she was in the military. Plaintiff testified that she could not vacuum, sweep or wash the floor, or clean tubs or toilets because bending hurt her back. Tr. 456-458, 462-466, 469-470, 472-473.

### A.   Treating Physician

On March 24, 2003, treating neurologist Dr. Morgenstern completed forms titled "Clinical Assessment of Pain" and "Medical Source Statement." She wrote that Plaintiff's pain was present to the extent to be distracting to the adequate performance of activities of daily work. Tr. 402-403. Dr. Morgenstern opined that Plaintiff could occasionally lift less than ten pounds; could stand and/or walk for approximately one hour in an eight-hour workday; and sitting was not affected by her impairment. Tr. 404-406.

Plaintiff alleges that the ALJ erred in rejecting Dr. Morgenstern's opinion of the symptoms of fibromyalgia due to the absence of findings not associated with the diagnosis. The Commissioner contends that the ALJ did not reject Dr. Morgenstern's assessment because there were no objective findings of fibromyalgia, but rather properly did not give the opinion controlling weight because there were no objective findings of degenerative disc disease. Additionally, the Commissioner argues that the ALJ properly rejected Dr. Morgenstern's opinion because her treatment records did not reflect the limitations set forth in the Medical Source Statement and her assessment was at odds with the exertional determinations of Dr. Kincheloe and the State agency medical consultants.

Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir.

1988), and <u>Foster v. Heckler</u>, 780 F.2d 1125, 1130 (4th Cir. 1986). In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating physician. <u>See</u> <u>also</u> <u>Mitchell v. Schweiker</u>, 699 F.2d 185 (4th Cir. 1983). The court in <u>Mitchell</u> also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. <u>DeLoatche v. Heckler</u>, 715 F.2d 148 (4th Cir. 1983).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). The Court in <u>Craig</u> found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." <u>Craig</u>, 76 F.3d at 589.

Contrary to Plaintiff's argument, the ALJ did not simply discount Dr. Morgenstern's opinion because there was a lack of objective findings as to her fibromyalgia. Instead, the ALJ stated that he assigned little weight to Dr. Morgenstern's opinion because: (1) although Dr. Morgenstern diagnosed degenerative disk disease, examination of her progress notes showed that all laboratory testing was negative; (2) Dr. Morgenstern admitted that the determination of Plaintiff's functional abilities was confirmed by objective findings to some degree only; (3) Dr. Morgenstern based her opinion in part on Plaintiff's subjective complaints; (4) Dr. Morgenstern's opinion was inconsistent with her own findings; and (5) Dr. Morgenstern's opinion was inconsistent with other substantial evidence in the case record. Tr. 29.

The ALJ's decision to discount Dr. Morgenstern's opinion is supported by substantial evidence. Dr. Morgenstern diagnosed Plaintiff with degenerative disc disease. Physical examinations, however, revealed good range of motion of Plaintiff's neck, full range of motion of her back, strength within normal limits, no spasm in her trapezius muscles, and no sciatic notch tenderness. Tr. 181, 215, 230, and 408. Nerve conduction and electromyography studies were found to be suggestive of only mild left C5-C6 and L5-S1 radiculopathy. Tr. 175. Cervical and lumbar x-rays and MRIs were normal and demonstrated only minimal disc narrowing at C4-C5, normal vertebrae and disc space, normal vertebral alignment, and no evidence of fractures or subluxation. Tr. 189-192, 388-389, 408.

Although Dr. Morgenstern indicated in her March 2003 statements that Plaintiff had an exertional ability to do less than the full range of sedentary work, her treatment notes did not reflect any significant restrictions on Plaintiff's activities. Dr. Morgenstern's opinion of disability is also not supported by the findings of Plaintiff's other treating and consultative physicians who did not place any restrictions on Plaintiff that would preclude her from performing sedentary work. As discussed above, Dr. Ruffing opined that Plaintiff's mental impairments caused only slight work-related limitations (Tr. 444-445) and Dr. Kincheloe opined that Plaintiff could occasionally lift twenty-five pounds, frequently lift ten pounds, stand and/or walk for less than two hours in an eight-hour workday, and had no limitations on her ability to sit (Tr. 411-41).

The ALJ's decision is also supported by the finding of State agency medical consultants. See 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of

10

administrative review."). On July 9, 2002, a State agency physician reviewed Plaintiff's medical records and determined that she could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. Tr. 163-170. On December 30, 2002, another State agency physician reviewed Plaintiff's records and opined that she could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. Tr. 245-252.

  B.  Pain/Credibility

    Plaintiff alleges that the ALJ erred in making his credibility determination because he found that she has fibromyalgia and chronic pain syndrome which have no objective findings, but then rejected her symptoms because the findings of these impairments were absent. She claims that it was error to require evidence of symptoms after accepting the diagnosis of the underlying impairment. The Commissioner contends that the ALJ properly considered all of the evidence, medical and non-medical, in determining that Plaintiff's testimony was not credible to the extent she claimed she was precluded from performing all substantial gainful activity.

  In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available

11

evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

Here, the ALJ states that he discounted Plaintiff's testimony because it was inconsistent with her own prior statements and actions and with the medical record as a whole. Tr. 29. The ALJ, however, did credit Plaintiff's complaints of pain to the extent he found that her pain limited her to sedentary work. Tr. 25, 32. In reaching his decision, the ALJ took into account the effect of Plaintiff's medications, her daily activities, medical notes, objective testing, and inconsistencies in the record. See Tr. 25-28.

The ALJ's finding concerning Plaintiff's pain and credibility is supported by substantial evidence. As discussed above, the ALJ's decision is supported by the objective medical evidence. Further, Plaintiff's impairments were treated in a fairly conservative manner and she did not require surgery, frequent emergency room treatment, or hospitalization (other than Plaintiff's one three-week pain management course). Plaintiff did not allege a mental impairment in her disability application. See Tr. 125. No mental health care provider placed any limitation on Plaintiff's ability to perform work activities due to her mental impairments. Dr. Suzanne Shealy, a psychologist at the Tampa VA facility, noted that Plaintiff was focused on obtaining documentation that she was unable to work and might have secondary gain issues. Tr. 341. Dr. Ruffing noted that Plaintiff had some possible indicators of histrionic personality features. Tr. 443. A physical therapist at the Columbia VAMC noted that Plaintiff exhibited exaggerated pain behaviors. Tr. 373.

The ALJ also noted numerous inconsistencies in the record. Tr. 25-28. Plaintiff testified at the hearing that she could only sit for twenty to thirty minutes (Tr. 469), but both Dr. Morgenstern and Dr. Kincheloe opined that Plaintiff's ability to sit was not affected by her impairments (Tr. 405, 412) and both State agency medical consultants opined that Plaintiff could sit for about six hours in an eight-hour day (Tr. 164, 246). In an October 31, 2001 letter to the VA, Plaintiff stated that her condition "made her unable to walk, write, or drive a car" (Tr. 234), but two weeks later she told Dr. Morgenstern that she was enrolled in college and commuted seventy miles a day to attend classes (Tr. 180). Plaintiff testified that she had problems with her memory and missed appointments (Tr. 471), but the record does not reflect missed medical appointments and Dr. Ruffing noted no evidence of memory dysfunction (Tr. 442). Plaintiff told an occupational therapist at the pain center that her pain was intensified by any physical activity and sitting for long periods of time (Tr. 364), but also stated she spent her leisure time swimming, going to the movies, reading, painting, and watching television (Tr. 364). Plaintiff reported to Dr. Ruffing that she was able to care for her personal needs, drove a car, went to church once a week, went shopping at times, and participated in meal preparation, laundry, and cleaning if she was physically able to do so. Tr. 441.

C.     Past Relevant Work

Plaintiff alleges that the ALJ erred in finding that she could do past work without detailing the demands of the work in his decision. She claims that the ALJ erred in finding that she could return to past work when she never performed a sedentary dispatcher job and she described her job as a dispatcher as work consistent with medium, rather than sedentary, work.

Plaintiff wrote that the job title of her last job (from December 2000 to July 2001), was that of an office manager/dispatcher. Tr. 134-135. She listed her job duties as:

> Answer phones, order supplies, inventory shipping and receiving, write and act on correspondence, payroll paperwork/HR paperwork on all employees to forward to corp. ofc, receive and disseminate mail, use computer & email (inter & intranet), dispatch technicians to job sites/assign work orders.

Tr. 135. She also described the work as involving more than sedentary work with lifting and carrying satellite equipment, wireless security systems equipment, office equipment, and office supplies up to fifty pounds.

The ALJ found that Plaintiff had past relevant work as a dispatcher, office manager, and a finance loan officer, but that she could only perform the past relevant work as a dispatcher. The ALJ erred in finding that Plaintiff could perform her past relevant work as a dispatcher as there is no indication that Plaintiff ever performed the job of dispatcher. Instead, Plaintiff merely listed that her last job was that of office manager/dispatcher. This appears to be a composite job and the ALJ erred in separating the duties of her prior work in order to find that she could perform her past relevant work. See Bechtold v. Massanari, 152 F. Supp.2d 1340 (M.D. Fla 2001)(Claimant had past work as receptionist that involved filing and answering telephones. ALJ should not have bifurcated duties in order to find that claimant retained the RFC to perform her past work based on her ability to answer phones when she could no longer perform filing); Armstrong v. Sullivan, 814 F.Supp. 1364 (W.D.Tx. 1993); see also Kolka v. Chater, 70 F.3d 1279 (9th Cir. 1995)(ALJ did not err in finding that Plaintiff could perform his past relevant work where the VE talked at times about the two individual jobs Plaintiff performed that made up his composite job where the ALJ specifically found that Plaintiff could perform his past relevant work as a fire watcher and clean-up man).

The Social Security Regulations provide:

> [C]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case. For those instances

>       where available documentation and vocational resource material are not
>       sufficient to determine how a particular job is usually performed, it may be
>       necessary to utilize the services of a vocational specialist or vocational
>       expert.

SSR 82-61. This action should be remanded to determine whether Plaintiff can perform any of her past relevant work and if not, to continue to step five of the sequential evaluation process.[2]

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to properly determine whether Plaintiff can perform any of her past relevant work and, if necessary, to continue the sequential evaluation process.

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action as set out above.

>                               Respectfully submitted,
>
>                               s/Joseph R. McCrorey
>                               United States Magistrate Judge

November 16, 2006
Columbia, South Carolina

---

[2] In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id.